Philip J. Furia (NJ Bar No. 013152009)
**FURIA LAW LLC**
880 Third Avenue, Fifth Floor
New York, New York 10022
Tel: 646-830-1915
furiap@furiafirm.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com
**Pro hac vice* forthcoming

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VINCENT PALMERI, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>MERCADIEN, P.C., CPAS,<br><br>*Defendant*. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vincent E. Palmeri ("Plaintiff") brings this class action lawsuit against Defendant Mercadien, P.C., CPAs ("Mercadien" or "Defendant") for its failure to properly secure and safeguard the personally identifiable information

("PII") of Plaintiff and Class Members that Defendant collected, stored, and maintained within its information network.

## INTRODUCTION

1. Defendant Mercadien, P.C., CPAs is a New Jersey-based certified public accounting and financial advisory firm that provides accounting, tax, audit, compliance, and advisory services to privately-owned businesses, financial institutions, nonprofit organizations, government entities, and individuals and families. In the course of providing those services, Defendant collects, stores, and maintains highly sensitive PII belonging to clients and to other individuals whose information is shared with Defendant in connection with the services it renders.

2. Between September 17, 2025 and October 9, 2025, an unauthorized third-party cybercriminal or criminals gained access to Defendant's information systems and exfiltrated the PII of an undetermined number of individuals (the "Data Breach"). Defendant discovered the unauthorized access on or about November 7, 2025, having failed to detect an active intrusion that had been ongoing for approximately three weeks.

3. Despite discovering the Data Breach in early November 2025, Defendant did not begin mailing written notification letters to affected individuals until December 1, 2025. Plaintiff received his notification letter on or about February 17, 2026 — more than five months after the Data Breach concluded and

more than three months after Defendant's own discovery of the intrusion. This delay deprived Plaintiff and Class Members of the ability to take timely protective action.

4. Defendant filed breach notifications with the Maine Attorney General and the Massachusetts Attorney General, among other state regulators, reflecting the broad geographic reach of the incident. The total number of individuals affected has not been publicly confirmed; Defendant represented to state regulators that the total was "TBD" as of the date of filing.

5. PII generally encompasses information that can be used to distinguish or trace an individual's identity. It includes highly sensitive identifiers that are particularly valuable to malicious actors, such as Social Security numbers, financial account numbers, dates of birth, driver's license and government-issued identification numbers, and payment card information.

6. The PII stolen from Defendant's systems includes, without limitation: names, addresses, dates of birth, driver's license and government-issued identification numbers, Social Security numbers, and financial account information. For certain individuals, the compromised data also includes usernames and passwords, IRS Identity Protection PIN numbers, and payment card information.

7. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement adequate and reasonable measures to safeguard the PII entrusted to its care; failing to detect,

prevent, and timely disclose the Data Breach; and failing to adhere to applicable, required, and industry-standard protocols governing the collection, storage, encryption, and protection of sensitive personal data.

8. As a result of the Data Breach, the PII of Plaintiff and Class Members was accessed and exfiltrated by unauthorized third parties who seek to profit from that information by committing identity theft, financial fraud, tax fraud, and other crimes against Plaintiff and Class Members.

9. Plaintiff and Class Members have a substantial and continuing interest in ensuring that their PII is and remains secure, and they are entitled to injunctive, declaratory, and other equitable relief to compel Defendant to implement and maintain adequate data security safeguards going forward.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, because: (a) the proposed Class consists of 100 or more members; (b) at least one Class Member is a citizen of a state diverse from Defendant's citizenship; and (c) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendant because Defendant is organized under the laws of the State of New Jersey and maintains its principal place of business in this District.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is located in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

**Plaintiff Vincent E. Palmeri**

13. Plaintiff Vincent E. Palmeri is an adult individual and, at all relevant times herein, a resident and citizen of New York, residing in Staten Island, New York. Plaintiff is a victim of the Data Breach.

14. Plaintiff's PII was maintained by Defendant in connection with accounting or advisory services Defendant provided to an entity with whom Plaintiff had a relationship, and through which Plaintiff's data came into Defendant's possession and control.

15. Plaintiff received a written notice of the Data Breach from Defendant, dated February 17, 2026, informing him that his name and financial account number were among the categories of personal information potentially compromised in the Data Breach.

16. Plaintiff takes care to safeguard his PII and has never knowingly transmitted sensitive personal information over an unsecured channel. Plaintiff

stores documents containing his PII in a secure location and uses strong, unique credentials for his online accounts.

17. Plaintiff entrusted his PII to Defendant — or to an entity that shared it with Defendant in the course of receiving Defendant's services — in reliance on the reasonable expectation that Defendant would protect that information with adequate security measures. Had Plaintiff known that Defendant's data security posture was deficient, Plaintiff would not have permitted his PII to be entrusted to Defendant.

18. As a direct and proximate result of the Data Breach, Plaintiff has suffered, and will imminently continue to suffer, injury-in-fact and damages, including: (a) the unauthorized access and exfiltration of his highly sensitive PII; (b) a substantial and imminent risk of identity theft, financial fraud, and tax fraud; (c) loss of the value of and control over his PII; (d) out-of-pocket costs and lost time associated with monitoring and mitigating the consequences of the Data Breach; and (e) anxiety, emotional distress, and loss of privacy.

19. Since the time of the Data Breach Plaintiff's PII has been misused as Plaintiff has experienced a striking and unusual uptick in spam calls.

20. Because Social Security numbers, financial account numbers, and other static identifiers are among the categories of PII exposed, Plaintiff faces a lifetime risk of ongoing identity theft. Such information cannot be changed and remains available to criminal actors indefinitely.

**Defendant Mercadien, P.C., CPAs**

21. Defendant Mercadien, P.C., CPAs is a New Jersey professional services corporation with its principal place of business located at 3625 Quakerbridge Road, Hamilton, New Jersey 08619. Defendant provides accounting and advisory services — including traditional audit and financial reporting, tax compliance and planning, compliance oversight, outsourced CFO services, transaction advisory, litigation support, and management and board consulting — to privately-owned companies, financial institutions, nonprofit and human services organizations, government entities, and individuals and families.

22. As part of its business operations, Defendant routinely collects, stores, and maintains PII belonging to clients, client employees, and other individuals whose information is shared with Defendant in connection with the professional services it renders. By acquiring, collecting, and storing that PII, Defendant assumed legal and equitable duties to safeguard it from unauthorized access and disclosure.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following proposed Class:

*All individuals within the United States whose PII was exposed to unauthorized third parties as a result of the Data Breach experienced by Defendant between September 17, 2025 and October*

*9, 2025, including all individuals who received written notification of the Data Breach from Defendant.*

24. Excluded from the Class are: Defendant and its parents, subsidiaries, affiliates, officers, directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding; any federal, state, or local governmental entity; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

25. Plaintiff reserves the right to amend the Class definition or to propose subclasses in subsequent pleadings and in connection with any motion for class certification.

26. This action may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the membership of the proposed Class is readily ascertainable from Defendant's own records.

27. Numerosity. The members of the Class are so numerous that joinder of all members is impractical. Defendant filed breach notifications with state regulators in multiple states including Maine and Massachusetts, reflecting the broad geographic scope of the Data Breach. The exact number of Class Members is unknown to Plaintiff at this time but is ascertainable through discovery.

28. Commonality. There are numerous common questions of law and fact that predominate over any individual questions, including but not limited to:

(a) Whether Defendant had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

(b) Whether Defendant knew or should have known of the susceptibility of its data security systems to unauthorized access;

(c) Whether Defendant's security measures were reasonable in light of applicable industry standards and regulatory guidance;

(d) Whether Defendant's failure to implement adequate data security measures caused or contributed to the Data Breach;

(e) Whether Defendant failed to comply with applicable laws, regulations, and industry standards governing data security;

(f) Whether Defendant adequately, promptly, and accurately notified Plaintiff and Class Members that their PII had been compromised;

(g) Whether Defendant's conduct was the proximate cause of the compromise of PII belonging to Plaintiff and Class Members;

(h) Whether Plaintiff and Class Members are entitled to actual, compensatory, and/or nominal damages; and

(i) Whether Plaintiff and Class Members are entitled to injunctive and equitable relief.

29. Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising from Defendant's common course of conduct in failing to adequately protect PII entrusted to its care.

30. Adequacy of Representation. Plaintiff is an adequate representative of the Class in that he has the same interests as Class Members, is committed to the vigorous prosecution of this action, and has retained competent counsel experienced in data breach class action litigation. Plaintiff is not subject to any individual defenses unique from those applicable to the Class.

31. Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members, while not inconsequential, may be relatively small, making individual litigation impractical. Prosecution of separate actions would create a risk of inconsistent rulings and would impose undue hardship and expense on the courts and the litigants.

32. Unless class-wide relief is granted, Defendant may continue to fail to properly secure the PII of Class Members and may continue to act unlawfully as set forth herein. Defendant has acted or refused to act on grounds generally applicable to the Class, making final injunctive or declaratory relief appropriate with respect to the Class as a whole.

## COMMON FACTUAL ALLEGATIONS

**The Data Breach and Defendant's Response**

33. On or about November 7, 2025, Defendant discovered that an unauthorized actor had gained access to a portion of its information environment. The intrusion had been ongoing since at least September 17, 2025, and continued through October 9, 2025 — a window of approximately three weeks — before Defendant detected it. The extended duration of the undetected intrusion reflects serious deficiencies in Defendant's monitoring and detection capabilities.

34. According to breach notifications filed with state attorneys general, the nature of the intrusion was an external system breach through hacking. Defendant engaged third-party cybersecurity experts to investigate the incident, assess the scope of the compromise, and assist with remediation. Those experts confirmed that Defendant's network had been compromised and that files containing personal information had been accessed.

35. Defendant did not begin mailing written notification letters to affected individuals until December 1, 2025 — approximately three weeks after discovering the breach. Plaintiff received his notification letter on or about February 17, 2026, more than three months after the initial notifications were sent. The delay in notifying Plaintiff and Class Members prevented them from taking timely steps to protect themselves from the foreseeable consequences of the Data Breach.

36. Defendant's notification to Plaintiff, dated February 17, 2026, identified his name and financial account number as categories of information compromised. Defendant's public website notice further disclosed that the following categories of PII may have been impacted, depending on the individual: names, addresses, dates of birth, driver's license and government-issued identification numbers, Social Security numbers, financial account information, usernames and passwords, IRS Identity Protection PIN numbers, and payment card information.

37. Defendant filed breach notifications with state regulators in multiple states. The written notices addressed to affected individuals included state-specific disclosures for residents of, among others, Hawaii, Michigan, Missouri, North Carolina, Vermont, Virginia, Wyoming, Illinois, Iowa, Maryland, Oregon, West Virginia, New Mexico, Washington D.C., Rhode Island, and New York, further confirming the broad multi-state reach of the Data Breach.

38. Despite the passage of considerable time since the Data Breach, Plaintiff and Class Members remain largely uninformed about the precise manner in which the breach occurred, the specific vulnerabilities exploited, the full scope of data exposure, and the concrete measures Defendant has implemented to prevent recurrence. This ongoing lack of transparency compounds the harm suffered by Plaintiff and Class Members.

39. Plaintiff and Class Members are left to speculate as to where their PII ended up, who has used it, and for what nefarious purposes, and are further left to speculate as to how Defendant intends to prevent future breaches of the PII that remains in Defendant's possession.

**Defendant's Collection and Stewardship of PII**

40. As a certified public accounting and advisory firm serving a diverse national client base, Defendant routinely obtains, processes, and retains PII belonging not only to its direct clients but also to individuals whose data is shared with Defendant in the ordinary course of rendering professional services. Plaintiff is one such individual.

41. By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to protect that information from unauthorized access and to maintain it in a manner consistent with applicable law and industry standards.

42. Plaintiff and Class Members had a reasonable expectation that Defendant would employ appropriate security safeguards to protect the PII entrusted to its care. They relied on that expectation in permitting their PII to be shared with Defendant or with entities that engage Defendant's services.

43. Defendant could have prevented or substantially limited the Data Breach had it implemented reasonable and industry-standard security controls,

including timely vulnerability patching, network segmentation, multi-factor authentication, robust access controls, comprehensive intrusion detection and monitoring, and adequate encryption of sensitive PII at rest and in transit.

44. Defendant's failure to protect the PII in its possession is particularly inexcusable given: (a) the well-documented and escalating threat of external cyberattacks targeting professional services firms handling sensitive financial data; (b) the obvious sensitivity of the information in Defendant's custody, including Social Security numbers, financial account numbers, and IRS Identity Protection PINs; and (c) the widely available guidance on data security best practices published by the Federal Trade Commission, professional associations, and industry groups.

**Defendant's Obligations to Safeguard PII**

45. The Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), prohibits "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has consistently interpreted this prohibition to require companies to maintain reasonable and appropriate security measures to protect consumers' sensitive personal information.

46. The FTC has published detailed guidance — including "Protecting Personal Information: A Guide for Business" and "Start with Security: A Guide for Business" — articulating minimum security practices that constitute reasonable data stewardship. These include: (1) encrypting sensitive information stored on computer

networks; (2) retaining PII only as long as legitimately necessary; (3) properly disposing of PII when no longer needed; (4) implementing robust access controls; and (5) maintaining policies and procedures to detect, respond to, and recover from security incidents.

47. Defendant, as a professional services firm collecting and storing PII on behalf of large numbers of individuals, is subject to the requirements of the FTC Act. Defendant's failure to implement and maintain reasonable data security measures constitutes an unfair act or practice in violation of Section 5 of the FTC Act.

48. In addition to obligations under federal law, Defendant had an independent common law duty — arising from its relationship with Plaintiff and Class Members, the sensitivity of the PII it collected, and the mutual expectations of the parties — to implement and maintain security measures adequate to protect that PII from unauthorized access.

49. Defendant breached its data security obligations in numerous respects, including but not limited to: (a) failing to implement adequate access controls and network monitoring; (b) failing to detect the active intrusion for approximately three weeks; (c) failing to encrypt or otherwise render inaccessible the sensitive PII of Plaintiff and Class Members; (d) failing to promptly notify affected individuals upon discovery of the breach; and (e) maintaining PII in a network environment not reasonably secured against the known and foreseeable threat of external hacking.

**The Value of PII and the Harm Caused by the Data Breach**

50. PII is a valuable commodity for which a thriving criminal underground market exists. Cybercriminals routinely buy and sell stolen personal data on dark web marketplaces. Published sources report that Social Security numbers sell for between $40 and $200, financial account data for between $50 and $200 or more, and access to entire corporate breach datasets for between $999 and $4,995 or more.

51. The combination of data elements compromised in the Data Breach — including Social Security numbers, financial account numbers, government-issued identification numbers, dates of birth, and IRS Identity Protection PIN numbers — is particularly dangerous because it enables criminals to commit a wide variety of fraudulent acts, including: opening fraudulent financial accounts; making unauthorized withdrawals or charges; filing fraudulent federal and state tax returns to misappropriate refunds; obtaining government benefits in a victim's name; and applying for credit, loans, or other services using stolen credentials.

52. There is often a significant lag between the theft of PII and its misuse. On average, it takes approximately three months for a consumer to discover that their identity has been stolen and exploited; for some victims, the discovery period extends up to three years. Plaintiff and Class Members therefore face not only an immediate risk of harm but a long-term, ongoing threat requiring sustained vigilance and protective action.

53. Defendant, as a sophisticated professional services organization handling financial and tax data daily, knew or should have known both the market value of the PII in its custody and the foreseeable consequences of failing to protect it. Defendant's failure to implement basic security safeguards despite that knowledge was intentional, willful, reckless, and/or grossly negligent.

54. Defendant disregarded the rights of Plaintiff and Class Members by: (i) failing to take adequate and reasonable measures to secure its network against unauthorized intrusion; (ii) failing to disclose that its security practices were inadequate; (iii) failing to take available steps to prevent the Data Breach; (iv) unreasonably delaying notification to affected individuals; and (v) providing insufficient information to Plaintiff and Class Members about the full scope of the compromise and Defendant's remedial response.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

55. Plaintiff realleges and incorporates by reference each of the preceding allegations as though fully set forth herein.

56. At all relevant times, Defendant owed Plaintiff and Class Members a duty of care to act with reasonable prudence in collecting, storing, using, and safeguarding their PII, and to implement commercially reasonable security measures

to protect that PII from unauthorized access. This duty arose upon Defendant's acceptance and retention of the PII of Plaintiff and Class Members as part of its business operations.

57. Among the specific duties Defendant owed Plaintiff and Class Members were duties to:

(a) exercise reasonable care in collecting, retaining, securing, protecting, and disposing of PII in its possession;

(b) protect PII using security procedures and systems compliant with applicable legal requirements and industry-standard practices;

(c) implement and maintain monitoring systems sufficient to timely detect unauthorized access to its network and data; and

(d) promptly notify Plaintiff and Class Members upon discovering that their PII had been compromised.

58. Defendant knew that the PII in its possession was highly sensitive and that inadequate security practices would subject Plaintiff and Class Members — who had no alternative but to trust Defendant with their data — to foreseeable and substantial risk of harm.

59. Defendant knew, or should have known, of the significant and growing risk of external cyberattacks targeting professional services firms handling sensitive

financial data, and of the importance of maintaining robust cybersecurity defenses against such threats.

60. Only Defendant was in a position to ensure that its systems were sufficient to protect the PII that Plaintiff and Class Members had entrusted to its care. This asymmetry of control establishes a special relationship between Defendant and Class Members that independently supports the imposition of a duty of care.

61. Defendant also had independent duties under state and federal laws requiring Defendant to reasonably safeguard the PII of Plaintiff and Class Members and to promptly notify them of any data breach. These duties are untethered to any contract between the parties.

62. Defendant breached its duty of care to Plaintiff and Class Members by:

(a) failing to implement fair, reasonable, and adequate computer systems and data security practices to safeguard PII;

(b) failing to timely and accurately disclose that PII had been improperly acquired or accessed by unauthorized parties;

(c) allowing unrestricted and inadequately monitored access to PII maintained in unsecured systems;

(d) failing to implement processes to promptly detect data breaches and security incidents;

(e) failing to adequately train employees on data security policies and practices; and

(f) failing to encrypt or otherwise render inaccessible the PII of Plaintiff and Class Members so as to limit harm in the event of unauthorized access.

63. Defendant's failure to comply with these duties was unreasonable, reckless, and grossly negligent in light of the known and foreseeable risks of harm to Plaintiff and Class Members.

64. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered, and will continue to suffer, injuries including: (i) the wrongful exposure of their PII; (ii) a substantial and ongoing risk of identity theft, financial fraud, and tax fraud; (iii) loss of the opportunity to control how their PII is used; (iv) diminution in the value of their PII; (v) out-of-pocket costs associated with detecting, mitigating, and remedying the effects of the Data Breach; (vi) lost time and productivity; and (vii) anxiety, emotional distress, and loss of privacy.

65. The PII compromised in the Data Breach has inherent value. Plaintiff and Class Members have been deprived of the opportunity to control, manage, and derive value from their own personal information. This loss of control constitutes a distinct and cognizable injury.

66. Plaintiff and Class Members face a continuing risk of harm because the stolen PII remains in the hands of criminal actors who can continue to exploit it indefinitely, and because Defendant has not confirmed that all relevant vulnerabilities have been fully remediated. The damages suffered are therefore not speculative but continuing in nature.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

67. Plaintiff realleges and incorporates by reference each of the preceding allegations as though fully set forth herein.

68. Through the conduct of the parties and the nature of their relationship, Defendant and Class Members entered into implied contracts pursuant to which Defendant agreed to implement data security adequate to safeguard and protect the privacy of the PII entrusted to its care.

69. Class Members provided their PII to Defendant — either directly or through entities that engaged Defendant's services — as an implicit condition of the professional relationship. In soliciting, accepting, and retaining that PII, Defendant implicitly agreed to maintain it in a secure and confidential manner and to provide timely notification in the event it was compromised.

70. A meeting of the minds occurred: Class Members permitted their PII to be held by Defendant on the implied understanding that Defendant would protect it

with reasonable security measures. Class Members fully performed their obligations under these implied contracts.

71. Defendant breached these implied contracts by failing to adequately safeguard the PII of Plaintiff and Class Members and by failing to provide timely and accurate notice of the Data Breach.

72. As a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered and will continue to suffer: (a) an imminent and ongoing threat of identity theft, fraud, and financial harm; (b) actual financial losses; (c) loss of the confidentiality of their PII; (d) the risk that stolen data is being sold or exploited on dark web markets; (e) lost time and opportunity costs; and (f) other economic and non-economic harms.

## THIRD CAUSE OF ACTION
## Breach of the Implied Covenant of Good Faith and Fair Dealing
## (On Behalf of Plaintiff and the Class)

73. Plaintiff realleges and incorporates by reference each of the preceding allegations as though fully set forth herein.

74. Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing. This covenant is an independent obligation that may be breached even where no express term of the contract has been violated.

75. Plaintiff and Class Members complied with and performed all conditions arising from their dealings with Defendant.

76. Defendant breached the implied covenant of good faith and fair dealing by: (a) failing to maintain adequate data security practices to safeguard the PII of Plaintiff and Class Members; (b) failing to timely and accurately disclose the Data Breach upon its discovery; and (c) continuing to accept and retain PII after Defendant knew or should have known of significant vulnerabilities in its systems that were ultimately exploited by malicious actors.

77. By so acting, Defendant denied Plaintiff and Class Members the benefit of their bargain — namely, that their sensitive PII would be held securely — causing injury and damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

78. Plaintiff realleges and incorporates by reference each of the preceding allegations as though fully set forth herein. This claim is pleaded in the alternative to Plaintiff's claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing.

79. By its wrongful acts and omissions, Defendant obtained a benefit by taking undue advantage of Plaintiff and Class Members.

80. Prior to and at the time the PII of Plaintiff and Class Members came into Defendant's possession, Defendant caused or allowed them to reasonably

believe that their PII would be protected with reasonable and adequate security measures.

81. Defendant knew or should have known that reasonable individuals would not have engaged its services — or permitted their PII to be shared with Defendant — had they known that Defendant's information systems lacked adequate security safeguards. Defendant failed to disclose those deficiencies, thereby denying Plaintiff and Class Members the ability to make an informed decision.

82. Defendant was unjustly enriched at the expense of Plaintiff and Class Members, who did not receive the data security protections that were a material and expected element of the transaction.

83. Plaintiff and Class Members seek an order requiring Defendant to refund, disgorge, and pay as restitution all profits, benefits, and compensation obtained through its wrongful conduct, and/or the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

**FIFTH CAUSE OF ACTION**
**Negligence Per Se**
**(On Behalf of Plaintiff and the Class)**

84. Plaintiff realleges and incorporates by reference each of the preceding allegations as though fully set forth herein.

85. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the

failure by businesses to employ reasonable measures to protect consumers' sensitive personal data.

86. Pursuant to the FTC Act and the FTC's published guidance and enforcement precedent, Defendant had a duty to implement and maintain reasonable data security measures to protect the PII of Plaintiff and Class Members. Defendant violated this duty as described herein.

87. The harm suffered by Plaintiff and Class Members — the exposure and potential misuse of their PII, resulting in a substantial risk of identity theft, financial fraud, and tax fraud — is precisely the type of harm that Section 5 of the FTC Act is designed to prevent.

88. Defendant's violation of Section 5 of the FTC Act constitutes negligence per se.

89. But for Defendant's negligent breach of its statutory duty, Plaintiff and Class Members would not have suffered the injuries described herein.

90. The injuries suffered by Plaintiff and Class Members were the reasonably foreseeable result of Defendant's breach. Defendant knew or should have known that its failure to maintain adequate security would expose Plaintiff and Class Members to precisely these harms.

91. As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have suffered actual, tangible injury-in-fact and

damages, including: the exposure and potential exploitation of their PII; increased risk of identity theft and financial fraud; out-of-pocket mitigation costs; lost time and productivity; emotional distress; potential delay in receipt of tax refunds; and diminution in value of their PII.

92. As a result of Defendant's negligence per se, Plaintiff and Class Members are entitled to recover actual, compensatory, and punitive damages.

**SIXTH CAUSE OF ACTION**
**Invasion of Privacy — Public Disclosure of Private Facts**
**(On Behalf of Plaintiff and the Class)**

93. Plaintiff realleges and incorporates by reference each of the preceding allegations as though fully set forth herein.

94. Plaintiff and Class Members took reasonable and appropriate steps to keep their PII confidential. Prior to the Data Breach, their PII was not publicly known or accessible by unauthorized parties.

95. Plaintiff and Class Members had a legitimate and reasonable expectation of privacy in their PII, which was entrusted to Defendant solely for professional services purposes. They were entitled to protection of that information against disclosure to unauthorized third parties.

96. Defendant owed a duty to Plaintiff and Class Members to keep their PII confidential and to prevent its disclosure to unauthorized parties.

97. The unauthorized disclosure of the PII of Plaintiff and Class Members to criminal third parties as a result of the Data Breach is highly offensive to a reasonable person. The PII at issue — including Social Security numbers, financial account numbers, government-issued identification numbers, and IRS Identity Protection PIN numbers — is among the most sensitive categories of personal information, and its exposure subjects Plaintiff and Class Members to grave and long-lasting harm.

98. The PII of Plaintiff and Class Members is not a matter of legitimate public concern.

99. Defendant knew or should have known that the PII of Plaintiff and Class Members was private and confidential and should not be disclosed to unauthorized parties.

100. By failing to maintain adequate security for its network, Defendant effectively publicized and disclosed the private PII of Plaintiff and Class Members to criminal actors who obtained it for the express purpose of exploiting it for financial gain. It is substantially certain that the PII of Plaintiff and Class Members is rapidly becoming accessible to a broad criminal community as a result of the nature and scope of the Data Breach.

101. As a direct and proximate result of this invasion of privacy, Plaintiff and Class Members have suffered injury-in-fact and damages as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and each member of the proposed Class, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class under Federal Rule of Civil Procedure 23, including the appointment of Plaintiff as Class Representative and the appointment of Plaintiff's counsel as Class Counsel;

B. For an award of actual, nominal, compensatory, and consequential damages to Plaintiff and Class Members, as allowed by law, in an amount to be determined at trial;

C. That the Court enjoin Defendant, ordering it to cease the unlawful activities described herein;

D. For equitable and injunctive relief enjoining Defendant from engaging in the wrongful conduct alleged herein, and requiring Defendant to implement and maintain adequate data security safeguards, including but not limited to an Order:

   i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to encrypt all PII in its possession in accordance with applicable regulations, industry standards, and applicable law;

iii. requiring Defendant to engage independent third-party security auditors to conduct regular security assessments, penetration tests, and audits of its systems;

iv. requiring Defendant to implement network segmentation and access controls so that a compromise of one area of its network cannot spread to other areas;

v. requiring Defendant to implement and maintain a comprehensive threat monitoring program and incident response plan;

vi. requiring Defendant to establish an annual information security training program for all employees with access to PII; and

vii. requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the Data Breach and the steps available to protect themselves;

E. For an award of restitution and disgorgement of profits, benefits, and compensation obtained by Defendant through its wrongful conduct;

F. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

G. For an award of attorneys' fees, litigation costs, and expenses, as permitted by law; and

H. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all issues so triable.

Dated: February 24, 2026

**FURIA LAW LLC**

By: ______________________________
Philip J. Furia
880 Third Avenue, Fifth Floor
New York, New York 10022
Tel: 646-830-1915
furiap@furiafirm.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Counsel for Plaintiff and the Class*

**Pro hac vice* forthcoming